UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEALTHY LIFESTYLE BRANDS, LLC,

                                   Plaintiff,

                – against –

ENVIRONMENTAL WORKING GROUP,

                                   Defendant.

**OPINION AND ORDER**

20 Civ. 1098 (ER)

Ramos, D.J.:

     Healthy Lifestyle Brand ("HLB") brings this suit against Environmental Working Group ("EWG") for a breach of contract.  Doc. 1.  Pending before the Court is HLB's motion to amend its complaint to add a claim for breach of the implied covenant of good faith and fair dealing.  For the following reasons, HLB's motion is GRANTED.

I.     **BACKGROUND**

     **A.  Factual Background**

     HLB creates partnerships with health and wellness authorities with the goal of making consumers better informed when purchasing "healthy for you" products.  Doc. 1 ¶¶ 12, 14.  EWG conducts scientific research and educates consumers to make safer and better-informed decisions regarding the products they buy.  Doc. 1. ¶ 15; Doc. 22, ¶ 8.  In March 2015, HLB and EWG entered into an exclusive agreement (the "Agreement") whereby EWG licensed certain intellectual property to HLB, which in turn had the right to sublicense that intellectual property to third parties.  Doc. 1 ¶¶ 1, 20, 29.  At the time of the Agreement, the scope of the sublicensing program had not been determined.  *Id.* ¶ 29.  Throughout the remainder of 2015 and 2016, HLB researched the viability of a variety of sublicensing programs, and the parties discussed different options.  *Id.* ¶¶ 29–39.  By March 2017, the parties reached an agreement on the scope of the

sublicensing program which became known as the "Verified Program." *Id.* ¶ 30. Under that program, companies would submit products to EWG for evaluation, and if the products met EWG's product-safety and ingredient standards, the company could pay a sublicensing fee to HLB to display EWG's Verified mark on their product. *Id.*

In the original 2015 Agreement, EWG was to receive fifty percent of any sublicensing fee for new customers, and sixty percent of the fee from customers with whom they had a pre-existing relationship. *Id.* ¶ 20. In the original complaint, HLB alleged that in December 2017, EWG expressed an interest in renegotiating the agreement, but although the parties discussed a potential renegotiation in April 2018, they ultimately did not reach an agreement. *Id.* ¶ 42.

The initial term of the agreement was five years, from 2015–2020, which could be extended in two ways: 1) if HLB met certain renewal conditions, it had a unilateral right to renew, or 2) if HLB did not meet those conditions, the parties were required to discuss, in good faith, renewal for an additional term. *Id.* ¶¶ 1, 25–27. Toward the end of the five-year term on May 29, 2019, EWG verbally informed HLB that it intended not to renew the contract, and confirmed this intention in writing on October 30, 2019. *Id.* ¶¶ 3, 44, 46. After various communications between the parties, they began mediation, per the Agreement. *Id.*¶¶ 46–49. The first meeting took place on January 8, 2020, but after subsequent meetings, they were unable to agree on a settlement. *Id.*¶ 49.

On February 7, 2020, HLB commenced an action against EWG for breach of contract. Doc. 1. HLB alleged that it was entitled to renew the agreement because it had satisfied the renewal conditions and had a unilateral right to renew. *Id.* ¶¶ 54–60. Alternatively, HLB alleged that EWG breached the contract because it failed to discuss a renewal in good faith. *Id.* ¶¶ 65–70.

### B. Proposed Amended Complaint

On April 2, 2021, after discovery had begun, HLB submitted a motion to amend its

complaint to include an additional claim for breach of the implied covenant of good faith and fair

dealing.  Doc 37; Doc. 38, Ex. A ¶ 6.  HLB alleges certain documents produced in discovery

revealed that beginning in 2017, EWG began to withdraw support from the Verified Program,

and divert customers to its own program, Reviewed.  Doc. 38, Ex. A ¶ 6.

In the amended complaint, HLB alleges that in 2017, EWG had asked HLB to terminate

the Agreement early, which HLB was willing to do under the condition that EWG agree to pay a

termination fee.  *Id.* ¶ 52.  EWG was not willing to pay the termination fee, and so the

Agreement was not terminated.  *Id.*  HLB then cites an email from the documents EWG

produced on January 8 and 18, 2021, during the course of discovery.  *Id.* ¶¶ 54–55; Doc. 38 ¶ 4.

The email from EWG's Senior Vice President of Development and Partnerships, Jocelyn Lyle,

was sent on December 19, 2017, to the president of EWG, two EWG directors, and EWG's chief

financial officer.  *See* Doc. 38, Ex. A ¶ 54; Doc. 38, Ex. C.  In the email, Lyle wrote, "we should

talk about how we ramp up efforts to sell EWG REVIEWED science consulting where we get

100% of that revenue and pivot those relationships to EWG VERIFIED (where we get a %)."

Doc. 38, Ex. C.  HLB alleges this reflects a plan, beginning in 2017, to withdraw support from

the Verified Program in favor of EWG's internal program, Reviewed, after the attempt to

terminate the Agreement early was unsuccessful.  Doc. 38, Ex. A ¶¶ 51, 54–56.  HLB further

alleges that over the course of 2018 and 2019, EWG failed to provide sufficient support for the

Verified Program and had in fact been diverting customers to the Reviewed Program.  *Id.* ¶¶ 57–

58.

Citing another email produced in discovery dated May 22, 2019, HLB alleges that EWG

then intended to move customers from the Reviewed Program, to the Verified Program in 2020,

after the contract with HLB had terminated.  *Id.* ¶ 58.  In that email, addressed to an EWG

director, Lyle explains EWG's plan for the upcoming year, "we are focusing on a) converting

renewals to new contracts and b) our REVIEWED partners going to VERIFIED.  Our big growth

will be next year."  Doc. 38, Ex. D.  HLB alleges that this email reflects EWG's scheme to wait

to transfer customers from the Reviewed Program to the Verified Program until the contract with

HLB had ended.  Doc. 38, Ex. A ¶ 58.  HLB further alleges that this plan to divert customers to

Review and delay their transfer to the Verified program resulted in lower revenue to the Verified

Program, and therefore, to HLB.  *Id.* ¶ 61.  These actions are the basis of HLB's claim that EWG

breached the implied covenant of good faith and fair dealing.  *Id.* ¶¶ 81–86.

On February 18, 2021, approximately five weeks after the production of these

documents, HLB asked EWG to consent to an amended complaint that would include an

additional claim for breach of the implied covenant of good faith and fair dealing.  Doc. 38 ¶ 7.

EWG did not consent to the amended complaint.

On April 2, 2021, HLB submitted the instant motion to amend.  Doc 37; Doc. 38, Ex. A.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "[a] court should freely give leave"

to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15 (a)(2).  This is a liberal

standard, and "a motion to amend should be denied only if the moving party has unduly delayed

or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the

proposed amendment is futile."  *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452

(S.D.N.Y. 2016); *see also Ithaca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC*, 450 F.

Supp. 3d 358, 369 (S.D.N.Y. 2020) ("The Second Circuit has stated that a court should allow

leave to amend a pleading unless the non-moving party can establish prejudice or bad faith").

III.     **DISCUSSION**

    **A. Futility**

    *1. Standard for Futility*

    The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of [its] amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (quotation omitted). The non-moving party bears the burden of establishing the amendment's futility. *Ithaca Cap.*, 450 F. Supp. 3d at 377.

    To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Agerbrink*, 155 F. Supp. 3d at 456. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant had acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

    The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that

might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal

quotation marks and citations omitted). Thus, when ruling on a motion to dismiss pursuant to

Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all

reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

Accordingly, when considering a motion to amend a pleading, a "court must accept as true all

well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Agerbrink*,

155 F. Supp. 3d at 456.

      *2.   Claim for Breach of the Covenant of Good Faith and Fair Dealing*

      New York law implies a covenant of good faith and fair dealing in every contract

"pursuant to which neither party to a contract shall do anything which has the effect of

destroying or injuring the right of the other party to receive the fruits of the contract." *Thyroff v.*

*Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (citation omitted).  "To state a cause

of action for breach of the implied covenant of good faith and fair dealing, the plaintiff must

allege facts which tend to show that the defendant sought to prevent performance of the contract

or to withhold its benefits from the plaintiff." *Dweck Law Firm, L.L.P. v. Mann*, 340 F. Supp. 2d

353, 358 (S.D.N.Y. 2004) (quotation omitted).

      In its proposed amended complaint, HLB alleges that EWG breached the covenant of

good faith and fair dealing by surreptitiously diverting potential clients from the EWG Verified

Program, to its own program, EWG Reviewed, in order to avoid sharing revenue with HLB.

Doc. 38, Ex. A ¶ 6.  HLB alleges that although it was aware of the existence of the Reviewed

Program, it only learned of the "scheme" to divert potential clients after the production of an

email from the EWG Vice President, Jocelyn Lyle, where she wrote, "we should talk about how

we ramp up efforts to sell EWG REVIEWED science consulting where we get 100% of that

revenue and pivot those relationships to EWG VERIFIED (where we get a %)." Doc. 38, Ex. C; Doc. 42 at 2, 6.

EWG argues that HLB's allegations are conclusory and the facts pleaded are insufficient to survive a 12(b)(6) motion to dismiss. Doc. 41 at 6–7. To support its argument, EWG relies on *EBC I, Inc. v. Goldman Sachs & Co.*, where the New York Court of Appeals dismissed a claim for breach of good faith and fair dealing, holding that the complaint "[did] not adequately allege that [defendant] injured [plaintiff's] right to receive the benefits of their agreement." 832 N.E.2d 26, 33 (N.Y. 2005). In that case, the plaintiff alleged that the defendant had failed to provide information that the plaintiff believed had altered the defendant's behavior in a way that was harmful to the plaintiff. *Id.* at 30. However, the court held that the plaintiff failed to allege how the defendant's behavior changed in a way that violated the contract or deprived the plaintiff of the benefits of the agreement. *Id.* at 33. Because the plaintiff still "receive[d] the benefits of their agreement," the court dismissed the claim. *Id.* HLB's allegations are different. HLB has sufficiently alleged facts to suggest that EWG engaged in a scheme to divert clients in a manner that deprived HLB of potential profits which were the primary benefit of the agreement. Doc. 38, Ex. A ¶¶ 6, 51–58; *see EBC I, Inc.*, 832 N.E. 2d at 33. Specifically, HLB alleges that EWG surreptitiously attempted to "focus on expanding the Reviewed Program at the expense of the Verified Program" and to use the Verified Program to "build brand awareness while finding other ways to raise money to support EWG that would not require EWG to share revenue with HLB." Doc. 38, Ex. A ¶¶ 55–56. This is sufficient to state a plausible claim to relief. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Vibes Int'l Inc., SAL v. Iconix Brand Grp.*, No. 18-CV-11449 (JGK), 2020 WL 3051768, at *6 (S.D.N.Y. June 8, 2020) (holding that "allegations [that] amount to a theory that [defendant] diverted business away from

[plaintiff] that [plaintiff] was entitled to under the agreement" were sufficient to survive a motion to dismiss).

EWG further argues that HLB has failed to demonstrate how it was harmed by EWG's administration of the Reviewed Program.  Doc. 41 at 10–14.  EWG proposes facts to suggest that HLB was aware of the extent to which EWG utilized the Reviewed Program, and offers evidence to support this.  *Id.*  However, the degree to which HLB was aware of the Reviewed Program and its purpose is a factual dispute that cannot be resolved at this stage of the litigation.  *Talon Pro. Servs., LLC v. Centerlight Health Sys. Inc.*, No. 20 Civ. 78 (PAE), 2021 WL 1199430, at *10 (S.D.N.Y. Mar. 30, 2021) ("It is black-letter law that a factual rebuttal, where based on non-cognizable materials, is inappropriate on a motion to dismiss based on Rule 12(b)(6)." (citing *Ray v. Weit*, 708 F. App'x 719, 722 (2d Cir. 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co.*, 783 F.3d 395, 405 (2d Cir. 2015); *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp.*, 343 F.3d 189, 197 (2d Cir. 2003))).[1]

Finally, EWG argues that HLB has impermissibly created a new obligation under the agreement.  Doc. 41 at 14–15.  EWG claims that the contract gave them discretion in the manner in which they engaged clients in the EWG Reviewed program, as opposed to the EWG Verified program.  *Id.* at 14.  Again, EWG relies on its version of facts and events to support its arguments concerning the degree to which HLB was aware of the use and purpose of the

---

[1] Although neither party raises the issue, the Court notes that in its original complaint, HLB made allegations that EWG "surreptitiously has attempted to divert new sublicensing opportunities to its own staff" and "has begun to divert prospective candidates for the Verified Program into a different program as to which HLB shares no revenue . . . to improperly circumvent its contractual obligations under the Agreement."  Doc. 1 ¶¶ 50–51.  Although the Reviewed Program is not named specifically, the Court notes that these allegations were made prior to the production of the email.

Reviewed program.  As before, this is a determination of fact impermissible at this point in the proceedings.  *See Talon Pro. Servs., LLC.*, 2021 WL 1199430, at *10.

HLB has alleged sufficient facts to survive a 12(b)(6) motion to dismiss on the new claim that EWG breached the implied covenant of good faith and fair dealing.  Therefore, the claim is not futile.  Whether HLB will ultimately prevail on its claim is a matter for another day.

B. **Undue delay**

EWG argues that HLB's claim for breach of the covenant of good faith and fair dealing is unduly delayed because "at all times HLB . . . knew how Reviewed was designed and operated" and if they believed the program was interfering with EWG's obligations under the contract, EWG alleges, HLB should have brought the claim earlier.  Doc. 41 at 16–17.  EWG's argument, therefore, relies on a factual claim that the email from Ms. Lyle produced in discovery did not provide HLB with any new information.  HLB, on the other hand, identifies the production of this email as the point in time at which they "learned that EWG had circumvented the Verified Program to avoid sharing revenue with HLB"; new information that was previously unknown to them and which gives rise to their claim.  Doc. 42 at 1.

At this point in time, the "court must accept as true all well-pleaded facts and draw all reasonable inferences in the moving party's favor." *Agerbrink*, 155 F. Supp. 3d at 456.  Taking HLB's allegations as true, HLB sought leave to amend the complaint five weeks after receiving the email that suggested EWG breached the covenant of good faith and fair dealing.  Doc. 38, Ex. A; Doc. 42 at 1.  A five-week time lapse does not constitute undue delay. *See Cmty. Ass'n Underwriters of Am., Inc. v. Main Line Fire Prot. Corp.*, No. 18 Civ. 4273 (PMH), 2020 WL 5089444 (S.D.N.Y. Aug. 28, 2020) (finding no undue delay where Plaintiff filed its motion to amend two months after it discovered new information).

The Court therefore finds that HLB has not unduly delayed seeking leave to amend their complaint.[2]

## IV.   CONCLUSION

For the foregoing reasons, HLB's motion for leave to amend its complaint is GRANTED. The amended complaint shall be filed by October 8, 2021.  The Clerk of the Court is respectfully directed to terminate the motion, Docs. 37, 38, and 39.

It is SO ORDERED.

Dated:    September 29, 2021
          New York, New York

_____
Edgardo Ramos, U.S.D.J.

---

[2] Even if the Court were to find that HLB had unduly delayed in submitting their motion to amend, EWG has not sufficiently alleged that HLB has either acted in bad faith, or that they would suffer undue prejudice.  *Contrera v. Langer*, 314 F. Supp. 3d 562, 566 (S.D.N.Y. 2018) ("Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." (internal quotation mark omitted) (quoting *State Tchrs Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981))).